# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, WILLIAMS, and COOPER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JOHN M. CHANCELLOR**
**United States Army, Appellant**

ARMY 20230028

Headquarters, U.S. Army Southern European Task Force, Africa
Thomas P. Hynes, Military Judge
Colonel Erik L. Christiansen, Staff Judge Advocate

For Appellant: Captain Amir R. Hamdoun, JA; Joshua A. Hill, Esquire (on brief).

For Appellee: Colonel Richard E. Gorini, JA; Lieutenant Colonel Marc B. Sawyer, JA; Captain Alex J. Berkun, JA (on brief).

12 September 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WILLIAMS, Judge:

An enlisted panel convicted appellant, contrary to his pleas, of two specifications of sexual assault and one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2019) [UCMJ]. The military judge sentenced appellant to a dishonorable discharge and confinement for 18 months.[1][2]

---

[1] For Specification 2 of The Charge, to be confined for 18 months; for Specification 4 of The Charge, to be confined for 12 months; and for Specification 6 of The Charge, to be confined for 6 months; all sentences to confinement to be served concurrently.

[2] The convening authority approved appellant's request to defer automatic forfeitures until entry of judgment and to waive automatic forfeitures for 6 months

(continued . . . )

Appellant raises five assignments of error, one of which warrants discussion and relief.[3]

## BACKGROUND

Appellant and his wife, ▮▮▮▮▮▮▮▮▮▮▮, were friends with the victim and her husband, ▮▮▮▮ The group frequently spent time together and played games in Aviano, Italy.

The victim was close with ▮▮▮▮ and felt comfortable around her. Following a fight with her husband, the victim called ▮▮▮▮ and asked to go to ▮▮▮▮'s home. ▮▮▮▮▮ said yes.

At ▮▮▮▮'s home, the victim and ▮▮▮▮ talked and began to drink alcohol. The victim testified she drank multiple alcoholic beverages, over several hours. She drank a Moscow Mule, a Gatorade and vodka, and other unknown drinks. She did not finish all her drinks. She testified she became tipsy and drunk and at one point in time, spilled one of her beverages.

When the victim arrived at the home, appellant was playing video games upstairs. Later, he joined the victim and his wife downstairs. The group began to play games at the dining room table. One game involved drawing cards and either following the card's instruction or drinking alcohol. Often the card's instruction required a participant to pantomime a sexually charged act. They played games for a bit, but around 2042 hours, the victim texted her husband and asked him to pick her up because she was drunk. Her husband declined. Accordingly, she decided to stay the night at appellant and ▮▮▮▮'s home.

After playing games and spending time outside, the group retired to the living room to watch anime. There they each took up spots on the couch. The victim lay on the couch facing the television. Appellant and ▮▮▮▮ sat on the other side. The victim testified appellant touched her vagina with his foot as she lay on the couch in

---

( . . . continued)
after entry of judgment. The Judgment of the Court correctly reflects the approved request to defer automatic forfeitures but omits inclusion of the convening authority's decision to waive automatic forfeitures for a period of 6 months. The Judgment of the Court, dated 13 November 2023, is amended to reflect the convening authority's decision to waive automatic forfeitures, after entry of judgment for 6 months.

[3] We have fully and fairly considered the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine them to be without merit.

the fetal position. However, the victim did not confront him or tell him to stop. The victim testified, because she was drunk, tired, and wanted to go to bed, that she decided to raise her discomfort the next morning. She next fell asleep on the couch.

Appellant and his wife decided to go to bed, after watching approximately an hour of television. They went upstairs to their room; the victim remained downstairs on the couch asleep.

Later in the night, the victim and appellant ran into each other at the downstairs bathroom. The victim had awoken and needed to use the restroom. Appellant, who also needed to use the restroom, went downstairs. He wore a shirt, but he was nude from the waist down. As the victim exited the bathroom, appellant opened the door. She averted her gaze and returned to the couch to sleep.

Appellant approached the victim on the couch. She lay on her stomach. "[G]roggy," "dozing in and out," and "tipsy," the victim testified she felt a hand on her thigh and then it moved up to penetrate her vagina. She did not respond. Appellant testified he asked the victim, "do you want to do this?" The victim did not answer and testified she froze. Appellant next pulled her shorts and underwear down to her mid to upper thigh and penetrated her vagina with his penis. Throughout the encounter she did not say anything or resist. She kept her eyes closed through most of the event. Appellant stopped, pulled up the victim's shorts and underwear, and went back upstairs. He spent approximately fifteen to twenty minutes downstairs.

The victim quickly reached out for help. She texted her husband, despite it being approximately 0300 hours, that appellant touched her as she tried to sleep, and she wanted to go home. Her husband did not respond. The victim then texted ██████ two minutes later—approximately five minutes after appellant returned upstairs—and asked her to come downstairs. ██████ and appellant went downstairs.

██████ and appellant found the victim in a hysterical state. The victim asked appellant, "[d]id you touch me?" Appellant denied he touched her. As the victim collected herself, ██████ took her husband upstairs and confronted him with the victim's allegation. Appellant again denied anything happened with the victim.

██████ drove the victim home. The victim repeated she did not consent to appellant's actions, but ██████ countered he could not have done anything. ██████ explained she and appellant tried to have sex, after watching anime, but were unsuccessful because appellant could not obtain an erection. The victim continued to cry and said she wanted an apology.

The victim entered her home, broke down, and cried. She told her husband what happened. She told her husband she did not consent. They went to bed.

The victim woke the next morning and observed blood after using the restroom. Consequently, she went to the hospital and underwent a sexual assault forensic examination.

The victim reported the assault. Army Criminal Investigative Division special agents investigated and questioned appellant. Appellant initially denied he had any sexual or physical contact with the victim. Ultimately, he admitted he had sex with her, but he quickly stopped after he felt regret because his wife was upstairs. He claimed his actions were consensual, and the victim appeared to respond favorably when he "tested the waters." He noted she did not resist, did not say no, and seemed to moan with pleasure during the encounter.

At defense counsel's request, the convening authority appointed Major (MAJ) ███ as an expert consultant and potential expert witness in the field of forensic psychology. At trial, defense counsel requested to call him to testify as an expert witness on alcohol issues. The military judge denied the request during a Rule for Courts-Martial [R.C.M.] 802 conference. Summarizing his ruling, the military judge stated:

> The defense asked to offer Major ███ as an expert witness on alcohol issues. I denied that request because there's no evidence on the record on how much alcohol the alleged victim consumed. So, there's no reliable basis to make an assessment, and there's no basis to believe that this evidence would assist the fact finder.

Defense counsel clarified MAJ ███ would opine on the victim's level of intoxication based on the amount of alcohol she stated she consumed both in her testimony and "what was included in the evidence packet . . . ." Counsel noted MAJ ███ would provide an opinion on the victim's ability to consent or whether she was asleep. Subsequently, the military judge stated, "[a]nd I haven't changed my – the ruling that I summarized on [MAJ ███'s] testimony."

## LAW

We review a military judge's ruling to deny expert testimony for an abuse of discretion. *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993) (internal citation omitted); *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (internal citation omitted). "An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *Lloyd*, 69 M.J. at 99 (internal citation omitted). "'[T]he abuse of

4

discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range.'" *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citing *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004)).

To earn deference, military judges must create a "clear record" for review. *United States v. Finch*, 79 M.J. 389, 397 (C.A.A.F. 2020) (citing *United States v. Flesher*, 73 M.J. 303, 311 (C.A.A.F. 2014)). "'[W]here the military judge places on the record his analysis and application of the law to the facts, deference is clearly warranted.'" *Id.* (quoting *Flesher*, 73 M.J. at 312). Conversely, less deference is due a military judge who fails to create a clear record that describes his findings of fact, conclusions of law, and analysis thereof. *Id.* (quoting *Flesher*, 73 M.J. at 312).

To admit expert testimony, a litigant must establish: (1) the expert's qualifications; (2) the subject matter of the proffered testimony; (3) the basis for the testimony; (4) the legal relevance of the evidence; (5) the reliability of the evidence; and (6) that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the members, undue delay, waste of time, or is needlessly cumulative evidence. *Houser*, 36 M.J. at 397 (citing Military Rule of Evidence [Mil. R. Evid.] 702, 703, 401, 402, 403; *United States v. Gipson*, 24 M.J. 246 (C.M.A. 1987)).

"Whether rooted directly in the Due Process Clause . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment . . . the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal citation and quotations omitted). "Under the Compulsory Process Clause, a defendant has a 'right to call witnesses whose testimony is material and favorable to his defense.'" *United States v. Bess*, 75 M.J. 70, 75 (C.A.A.F. 2016) (quoting *Rock v. Arkansas*, 483 U.S. 44, 52 (1987)). This right is not without limit however; an appellant has "the right to present . . . that evidence which is legally and logically relevant." *United States v. Dimberio*, 56 M.J. 20, 24 (C.A.A.F. 2001) (citing *Chambers v. Mississippi*, 410 U.S. 284 (1973)). "Rules such as Mil. R. Evid. 403 . . . that exclude evidence from criminal trials do not abridge an accused's constitutional right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 26. "To rise to the level of constitutional error, a ruling must have infringed upon a weighty constitutional interest of the accused." *Id.* (citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998)).

"'For nonconstitutional errors, the Government must demonstrate that the error did not have a substantial influence on the findings.'" *United States v. Clark*, 62 M.J. 195, 200 (C.A.A.F. 2005) (quoting *United States v. McCollum*, 58 M.J. 323, 342 (C.A.A.F. 2003)). The inquiry is not whether sufficient evidence was produced to support the result; a reviewing court must "examine 'whether the error itself had

substantial influence.'" *Id.* (quoting *McCollum*, 58 M.J. at 342). When evaluating the prejudice caused by a military judge's erroneous evidentiary ruling we consider "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* at 200–01 (quoting *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)).

## DISCUSSION

### A. *Military Judge's Ruling*

As an initial matter, the military judge is due minimal deference. He did not discuss the applicable law or his legal analysis on the record to explain his decision.[4] He did not analyze the *Houser* factors or conduct a Mil. R. Evid. 403 balancing test on the record. Accordingly, he did not develop a clear record and receives less deference. *Finch*, 79 M.J. at 397.

The military judge abused his discretion when he prevented MAJ ███ from testifying. First, the military judge's abbreviated findings of fact were clearly erroneous. Summarizing the findings of fact he reached during the R.C.M. 802 conference, he stated, "no evidence [existed] on the record on how much alcohol the alleged victim consumed." The victim testified she drank five mixed alcoholic beverages. While perhaps underdeveloped as to the exact volume consumed, it is incorrect to say there was *no* evidence of the victim's alcohol consumption. Second, the military judge's legal analysis was similarly deficient. He observed, "there's no basis to believe that this evidence would assist the fact finder."[5] He did not cite *Houser* or any other relevant legal authority.

---

[4] It is perilous to conduct substantive matters in a closed conference. Use of R.C.M. 802 conferences to dispose of substantive matters is disfavored because neither the parties' respective positions, nor the military judge's factual conclusions and legal analysis, are developed on the record. While the military judge must *summarize* what was discussed, that summary will likely be underdeveloped. It certainly was in this case.

[5] To be sure, defense counsel had an obligation to develop the appellate record. However, the military judge limited defense counsel's ability to do so. Indeed, when counsel asked to supplement his position regarding MAJ ███, the military judge noted he could do so "briefly." Then, when counsel began to describe his position, the military judge interrupted him. We will not penalize defense counsel for an undeveloped record where the military judge's actions precluded counsel from establishing one.

Additionally, "[a]s a threshold matter . . . the military judge was obligated to determine whether [MAJ ██ s] testimony would be helpful to the panel." *Flesher*, 73 M.J. at 313. An expert may testify if his testimony would "assist the trier of fact to understand the evidence or determine a fact in issue." *Id.* (internal citation omitted); *see also* Mil. R. Evid. 702(a). The military judge did not accomplish this duty. Defense counsel proffered MAJ ██ would testify about the victim's level of intoxication and its bearing on her ability to consent. Defense counsel clarified MAJ ██ would consider both the victim's trial testimony and material in the evidence packet. Ultimately, counsel sought to introduce MAJ ██ s opinion on the victim's ability to consent or if she was asleep. Although brief, defense counsel proffered sufficient detail to establish MAJ ██ s testimony would be logically relevant. As a forensic psychologist, defense counsel stated MAJ ██ could provide expert testimony on intoxication. The panel heard the victim testify she drank alcohol and was, at some point, drunk. Consequently, MAJ ██ s testimony appears to meet the low threshold to be found relevant. Mil. R. Evid. 401(a)–(b); *United States v. Guihama*, 85 M.J. 48, 55 (C.A.A.F. 2024) (reiterating "[t]he relevance standard is a low threshold" (internal quotations and citation omitted) (alteration in original)).

The record does not disclose how the military judge analyzed defense counsel's proffer that MAJ ██ s opinion would be informed by the victim's testimony and the evidence packet. Certainly, MAJ ██ s opinion could be informed by both in-court testimony and material reviewed outside of trial. Mil. R. Evid. 703 (noting an expert's opinion may be based on facts or data he has "been made aware of or personally observed."); *see also, United States v. Sanchez*, 65 M.J. 145, 150 (C.A.A.F. 2007) (noting a military judge must determine whether the expert's conclusion could "reliably follow from the facts *known to the expert* . . . .") (emphasis added). Defense counsel stated MAJ ██ s opinion would be based on the victim's testimony and information "included in the evidence packet."

Logically relevant expert testimony "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members." *Houser*, 36 M.J. at 399–400 (citing Mil. R. Evid. 403). Here the military judge is due minimal deference because he failed to "articulate [his] balancing analysis on the record." *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000). He merely noted "there's no basis to believe that this evidence would assist the fact finder." This abbreviated finding provides insufficient insight into how the military judge balanced the probative value of MAJ ██ s potential testimony with the Mil. R. Evid. 403 factors. Major ██ s proffered testimony would have been probative to the victim's mental and physical state that evening, who testified several times that she was drunk. Further, she described her condition during the assault as, "a little groggy" and that she "was dozing in and out" because she was "a little tipsy." Major ██ s testimony may have proven useful for the panel

to place the entirety of the victim's testimony in context with her alcohol consumption.

### B. Prejudice[6]

Error alone does not warrant relief. To obtain relief the error must have materially prejudiced appellant's substantial rights. In light of the evidence admitted and excluded during trial, the materiality of MAJ █'s denied testimony gains greater weight. Accordingly, we conclude the exclusion of MAJ █'s testimony did result in prejudice to the appellant.

(1) *Strength of the Government's Case*: The government's case centered on the victim's testimony. She testified consistently with her previous out-of-court statements. Certainly, the government may prove a case beyond a reasonable doubt on a victim's testimony alone. But, in this case—considering the military judge's other evidentiary rulings[7]—where the issue is whether the military judge's error to exclude expert testimony of the effect alcohol may have had on the victim's mental alertness and acuity during the assault, we cannot conclude government's case was strong enough that the error had no substantial influence on the findings.

(2) *Strength of the Defense's Case*: Defense evidence that the parties played risqué drinking games, that the victim may have expressed envy of favorable

---

[6] Because we find prejudice under the nonconstitutional material prejudice standard, it is not necessary to determine if the military judge's exclusion of expert testimony in this case presented a constitutional question.

[7] Appellee references, in its brief, trial testimony that appellant ejaculated on the victim's buttocks and corresponding DNA evidence corroborated her account. Appellee correctly notes the military judge directed the panel "to disregard *any* and *all* references to whether the [appellant] ejaculated and whether there is any DNA evidence." (emphasis added). Because the trier of fact was precluded from considering this evidence, we will not either. *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006) ("[T]he Courts of Criminal Appeals are precluded from considering evidence excluded at trial in performing their appellate review function under Article 66(c)." (internal quotations and citation omitted)). Although redesignated to Article 66(d), this limitation on our review authority remains.

We note military judges have wide discretion to "exercise reasonable control over the proceedings," and "[r]ule on . . . interlocutory questions and . . . questions of law raised during the court-martial . . . ." R.C.M. 801(a)(3)–(4). However, military judges should be careful not to inappropriately impede or shape the case the litigants have developed—based on their fulsome knowledge of the entire case file—for the trier of fact.

8

character traits of the accused, and that she and her husband may have had a tumultuous marriage was not overly compelling. However, appellant testified and stated the victim consented to sex and matched the victim's testimony in several respects.

### (3) *Materiality of the Evidence in Question*:

"'When assessing the materiality and quality of the evidence, [a reviewing court] considers the particular factual circumstances of each case.'" *United States v. Green-Watson*, 85 M.J. 340, 348 (C.A.A.F. 2025) (quoting *United States v. Washington*, 80 M.J. 106, 111 (C.A.A.F. 2020)). When considering whether evidence is material, a court assesses how the erroneously excluded evidence "may have affected the court-martial." *Cf. Washington*, 80 M.J. at 111 (discussing materiality of evidence admitted in error). Put simply, we cannot conclude the military judge's error did not affect the court-martial.

After accounting for excluded evidence and instructions to disregard certain facts from the victim's testimony, the panel was left with evidence she drank a considerable volume of alcohol. She drank enough to—albeit self-professed—become drunk. Further, the panel heard testimony she struggled to remain awake. The panel heard the victim "passed out hard" when appellant and the ▮▮▮ went to bed; a fact appellee concedes. The panel heard her eyes were closed as appellant assaulted her, she did not say anything, and she did not resist.[8] Additionally, the panel heard the victim describe her condition as "groggy," "dozing in and out," and "tipsy" as appellant penetrated her. What the panel did not have was expert testimony to put her intoxication into context.

As noted above, on the testimony of the victim alone, the government may obtain and sustain a conviction beyond a reasonable doubt. However, in this case, the government may not favorably press the victim's credibility on elements of her testimony helpful to its case, while, on appeal, tacitly discount her testimony—i.e., that she was intoxicated and "dozing in and out,"—when it is unhelpful to its

---

[8] This is in no way meant to imply a victim is required to manifest her lack of consent. *See* UCMJ art. 120(g) ("Lack of verbal or physical resistance does not constitute consent."). The victim's lack of verbal or physical resistance combined with her self-professed drunkenness put her capability to consent in question. *See United States v. Mendoza*, 85 M.J. 213, 220 (C.A.A.F. 2023) (observing because Article 120(b)(2)(A) and (b)(3)(A) establish separate theories of liability, Article 120(b)(2)(A) criminalizes sex acts upon victims who are capable of consenting but do not). Defense counsel specifically informed the military judge MAJ ▮▮would testify about the victim's ability to consent. The government's assertion in its brief that "the issue of intoxication lacked any direct connection to the charged offense: sexual assault 'without consent,'" is not entirely accurate.

argument. Consequently, we are left to consider she credibly testified she drank enough alcohol to become drunk, she drank enough to remain "tipsy" hours later, and she was floating in an out of consciousness as appellant penetrated her.

Here, the strength of the government's case was the victim's testimony. Because of this, MAJ ██'s proffered testimony is particularly important. His assessment of how alcohol may have affected the victim's memory and perception that evening would have been useful to the panel. Further, he could have expounded on the victim's testimony that she was "dozing in and out" while appellant penetrated her: a point defense counsel specifically raised with the military judge. Accordingly, MAJ ██'s testimony would be material to the defense to attack the victim's credibility.

In weighing the materiality of the evidence, a factor to consider is "the extent to which the government referred to the evidence in argument." *Id.* (citing *United States v. Brooks*, 26 M.J. 28, 29 (C.M.A. 1988)). Here, the government injected the importance that alcohol had throughout the trial. While questioning appellant, trial counsel pointed out appellant knew the victim was "drunk." He further framed appellant's actions as "[taking] advantage of a friend who was sleeping on [his] couch, drunk and half asleep." Government counsel further referred to the victim as "half passed out and intoxicated" on the couch, during the assault. Government counsel noted multiple times in his argument that the victim had "passed out" on the couch and she was "half asleep on the couch" when appellant penetrated her. He highlighted she was intoxicated but the appellant was not. Consequently, MAJ ██ as an expert in forensic psychology and the effects of alcohol, would have been useful to the panel in weighing the victim's memory and perception of the event given repeated references that she was otherwise "passed out" or sleeping.

Certainly, the record does not elaborate on the volume of the alcoholic beverages the victim drank. It does not disclose their relative potency. The record does little to describe her body mass, other than she was five feet one inch, but the panel, military judge, and litigants observed her in court. While these omissions may have affected MAJ ██'s opinion, they do not establish his testimony would not be useful.[9]

While compelling, in isolation, the victim's outcry injected a question of her perception and consciousness during the assault. When SPC GC came downstairs with appellant, the victim asked, "[d]id you touch me?" The panel also heard SPC GC testify the victim told her in the car "I think this has happened," but caveated, "but I am not quite sure." Major ██'s testimony could have assisted the fact finder

---

[9] And at the risk of belaboring a point, because this issue was discussed in a closed R.C.M. 802 conference, we do not know what MAJ ██ reviewed in addition to the testimony of the witnesses and how it would have influenced his opinion.

in exploring the significance alcohol played on the victim's ability to consent, her ability to accurately perceive her surroundings, her memory, and her credibility.

(4) *The Quality of the Evidence in Question*:

Assessing the quality of the evidence is difficult. An expert in forensic psychiatry, at a minimum, could have educated the panel on the effects of alcohol, the duration of any effect, etc. A full analysis of the potential quality of MAJ ███'s testimony is impossible because the military judge addressed this issue in a R.C.M. 802 conference and failed to provide detailed findings of fact or conclusions of law.

The panel heard ample evidence the victim was intoxicated on the evening of 8 July 2021 to the point she "passed out." It heard those effects extended into the early morning of 9 July 2021. It heard testimony from the victim herself that alcohol influenced her physical and mental condition. What it did not hear, and what the defense tried to introduce, was expert testimony to explain or even challenge the victim's account. Accordingly, we conclude appellant suffered prejudice, and he is entitled to relief.

## CONCLUSION

The findings of guilty and the sentence are SET ASIDE. A rehearing is authorized.

Senior Judge FLEMING and Judge COOPER concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

11